ChampionX Corporation brought this case to enforce liability policies issued by the AIG defendants to Ecolab and its subsidiaries, including a subsidiary now owned by ChampionX. Without addressing the merits of the coverage issue at all, the District Court disposed of ChampionX's claims through a series of flawed and inconsistent orders that are challenged here. First, the District Court allowed the insurance company of the State of Pennsylvania, which I refer to as ICSOP, to effectively amend its answer months after the pleadings deadline had passed and to challenge ChampionX's standing to assert claims for coverage under the relevant policies. However, despite the federal rule's strong bias in favor of granting leave to amend, the District Court denied ChampionX's request to amend its own complaint in response to ICSOP's newly asserted defense. The Court precluded ChampionX from adding additional plaintiffs who clearly do have standing to pursue claims under the policies. We contend this was error. Second, the District Court held ChampionX lacked standing to seek declaratory relief. Even though it has spent over a million dollars defending the underlying Canadian lawsuit and despite the District Court's prior order holding that ChampionX has asserted an injury for purposes of Article III standing, ChampionX is an interested party under the Federal Declaratory Judgment Act as well as the Texas Act and should be permitted to pursue declaratory relief in this case. Subject to the Court's questions, I plan to focus on three key points here today. First, I'd like to address the fact that ChampionX Corporation has standing to pursue declaratory relief. Second, we will address the District Court's error in denying leave to amend the complaint to add additional plaintiffs who were both insured under the policies and named defendants in the Canadian lawsuit. Finally, I'd like to address, with the Court's permission, if there's interest, the AIG defendants' alternative grounds for affirmance and show that the pollution exclusion in the policies does not bar coverage here. Are there any questions at this point? Well, if you were allowed to add the plaintiffs that you weren't allowed to add to try to get contractual standing, how would that affect your own client's contractual standing if they're different contracts? They're the same policies and ChampionX Corporation would continue to seek declaratory relief as the parent corporation that has been paying the bills in the Canadian lawsuit for the defense. So the suit would be brought under the same insurance, well, relating to the same policies. But the subsidiaries, ChampionX Canada, ULC, and any of the other defendants in the Canadian lawsuit, they would be suing directly for breach of contract under the policies because they are the named insured. It wouldn't make your clients have standing. It wouldn't include them in those policies you're trying to add. It would only be for declaratory relief would be the purpose of that, Your Honor. First we'll address the standing declaratory relief issue. The district court held that ChampionX lacks contractual standing to bring its claims, but it also held that ChampionX meets the requirements for Article III standing because it had alleged that it was injured. It alleged that the injury was caused by the defendants, and it alleged that a ruling in its favor would redress that injury. Indeed, ChampionX provided evidence in the form of a declaration that it had incurred over a million dollars in defense costs in the Canadian action and was continuing to incur those costs. The district court's finding of Article III standing can't be reconciled with its holding that ChampionX was not an interested party for purposes of the declaratory relief. The availability of declaratory relief is a procedural issue, so we contend that federal law governs that, though I think the same result obtains whether you apply the Federal Declaratory Judgment Act or the Texas Act. The federal law, 28 U.S.C. 2201, cited in our brief, provides in a case of actual controversy, any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, and then it provides the caveat whether or not further relief is or could be sought. So there's no requirement in the federal statute for any type of contractual relief or even the ability to obtain damages. The only requirement is that the plaintiff be an interested party in the dispute. And here the district court held that ChampionX alleged an injury caused by the defendants and that the request of relief would redress that. So this makes it an interested party for purposes of the Federal Act and for the Texas Act. And notably, we argued this point in our opening brief, the AIG defendants completely failed to respond to that in their response brief. They offered no defense as to why there is not a right to declaratory or not a claim for declaratory relief asserted here by ChampionX Corporation. So we contend ChampionX Corporation is an interested party and has standing to at least pursue its claim for declaratory relief. Now I'll address the leave to amend issue. The underlying Canadian lawsuit arises out of work performed by an entity known as NALCO Canada, ULC. And it was using the trade name NALCO Champion. At the time this work was performed on this pipeline in Canada, NALCO Canada was a wholly owned subsidiary of Ecolab. So it was a named insured under both of these policies. NALCO Canada, and we laid out the transaction in the brief, it's somewhat complex as these things tend to be, but the crux of it is NALCO Canada was later acquired by what is now known as ChampionX Corporation, who's the plaintiff in this case. And after that acquisition, NALCO Canada changed its name to ChampionX Canada. So it's the same entity, the same corporate entity still exists. At the time the work was done in Canada, that entity was known as NALCO Canada and it was fully wholly owned by Ecolab. After the acquisition and currently, it is now a wholly owned subsidiary of ChampionX Corporation and is known as ChampionX Canada. So in June 2020, and it was I think a day after this acquisition closed, Highwood Oil Company sued ChampionX Canada and other defendants, which in reality ended up being multiple names for the same entity. They sued ChampionX Canada, they sued NALCO Canada, ULC, and then they sued the trade name for NALCO Canada, which was NALCO Champion. So it's, but it's largely rolled up into ChampionX Canada as well as Ecolab, sued all of those entities in Canada and ChampionX Corporation has been defending that lawsuit. ChampionX then tendered the claim on behalf of itself and Ecolab and the insurer defendants denied those, denied that claim. ChampionX had a good faith belief that it was as a result of all these transactions that it was the successor in interest under the policies and it brought this lawsuit in its own name in 2023. Now ICSOP, which is the U.S. company, filed an answer in state court and didn't challenge standing. It was a general denial, just made no mention of standing. It then removed the case to federal court, still did not assert any form of standing defense. In fact, it never challenged standing until months after the pleadings deadlines had passed and ChampionX filed a motion for partial summary judgment on the duty to defend issue. At that point, ICSOP came in and argued that ChampionX Corporation was not the right party to bring these claims and that it lacked contractual standing. Notably, the defendants did not dispute, or do not dispute still, that lack of standing is an affirmative defense under Texas law and that that defense must be pled or it is  It also doesn't dispute that it never asserted that defense in the district court until it responded to the summary judgment ruling order after that was filed. Can you back up? Of course. I'm sorry. I need some help. Sure. I understand. Can you help with the idea that why would there be rights to declare under the Texas Declaratory Judgment Act if there are no rights under the policies? You talked about it already, but can you clarify that again? The reason is because the Texas statute and the federal statute only require that the claims be brought by an interested party. But if you don't have any rights under the policies, there's nothing that's going to be able to be declared for you. But we are incurring losses as a result of the fact that they have failed to pay under those policies. But you don't have any rights under the policies, so they shouldn't pay under the policies if there's no . . . they're not applying to you. So that's what . . . I don't understand the fact that you're having some losses because the policies aren't paying, but the policies don't apply to you. I can understand how you can have Article III standing and not contractual standing, and it doesn't mean that you would have a declaratory judgment claim, because you actually have to have contractual standing to be able to be declared a right-taker from the contract. And so that's what I'm . . . I'm sorry. Maybe it's just some obtuseness on my part, but I don't understand that part of the case. Well, Your Honor, this Court has held previously . . . has found that entities who don't have contractual standing may bring claims for declaratory judgment where they are interested parties. And that would be the Scottsdale Insurance case, Looney Rick's Kiss Architects, Commerce and Industrial Insurance Company. Now, those were not cases dealing with a parent and a subsidiary, but they were cases where the injured third party who had brought a claim against the insured was joined in a declaratory judgment action and was able to assert their own declaratory judgment claim against the insurance company seeking coverage. So we don't think the declaratory judgment acts require any form of contractual standing. Here a subsidiary has an interest in ensuring that it's . . . I'm sorry. A parent company has an interest in ensuring that its subsidiary's contracts are abided by, and especially where they are helping to fund that, we believe they have standing for at least to seek declaratory judgment. And your best case for that is . . . The cases that I just cited, Your Honor. That are not in this context. They are not, but at least in those cases you can . . . the Court has recognized that you don't have to have contractual standing to have declaratory judgment standing. Well, it just seems the third party that's injured is differently situated than a parent or subsidy relationship. And we would say that this parent has already been injured to the extent of, you know, millions of dollars, so that's our position. Back to the . . . Unless you have any more questions on that, I'd like to resume with the leave to amend. Essentially, as I'm sure the Court is aware of, the District Court allowed, to sum up, the Court allowed the defendants to amend their answer belatedly, but then when Champion X asked to file an amended complaint that added these additional plaintiffs who clearly do have contractual standing, the Court denied that request. And the only basis cited by the District Court in that order was a one-word finding of futility. We think this Court's case law is extremely clear that more is required and that there needs to be a substantial reason to deny a leave to amend and that . . . I mean, I think this Court . . . in fact, Chief Judge Elrod recently wrote a decision to this effect in the Clark case saying that unless there's a substantial reason for denying leave to amend, the discretion of the District Court is not broad enough to permit denial. Here we think, given the state of events where the defendants were allowed to add a defense, an affirmative defense that everyone agrees was an affirmative defense, they added it months after the pleading deadline passed. The reason that defendants have to plead affirmative defenses is to put the plaintiffs on notice that that is what the argument is going to be and to give them an opportunity to cure that in their complaint. Champion X filed a motion to amend and it was denied. The futility that the judge noted is just not there. He didn't explain why he found it futile. We don't . . . we've set forth in our briefs responding to the arguments raised by AIG below as to futility, and we would contend that the judge erred, he abused his discretion. We also think the de novo review is likely required here because this is a purely illegal issue and we can cite the case on that when . . . Why isn't the anti-assignment provision a reason to say that it would be futile? Your Honor, we don't think the anti-assignment provision is implicated at all because it's the same entity. There was no assignment. NALCO . . . I'm sorry, Champion X Canada is the same entity that was NALCO Canada. So there's no assignment. It would be the same entity that was insured under the policies that's bringing this claim. So we don't think there's an assignment issue. So I see . . . I will reserve the rest of my time. Thank you. May it please the Court, Mike Yanov on behalf of the appellees ISOP and AIG, despite repeated findings by the district court that Champion X Corp. lacked standing and numerous opportunities to establish standing by competent summary judgment evidence, Champion X Corp. has never been able to establish that it is an insured, an additional insured, or under the broad form named insured clause. They have numerous related entities. They argue upstream commerce. They argue reverse triangular merger. And they make numerous arguments how all of these entities are related somehow in business, which may very well be true. But none of them, none of the evidence, including inadmissible evidence such as the very complex chart that they have produced, establishes that they are a party to insurance coverage and that they can obtain insurance coverage. Well, they say to get a declaratory judgment, they don't have to show that. Yes, Your Honor, I'll take that head-on to . . . and this would be under the federal declaratory judgment statute because it is procedural, but it doesn't matter. They are not an interested party. The only cases they can cite for an interested party who is not a part of the insurance policy is in the injured party context. When a plaintiff is an injured party, they do have rights in a declaratory judgment to declare the rights under the policy because the insurance coverage directly affects them. Contrast that with here, where the insurance coverage undisputedly will not provide coverage to Champion X Corp. That's not even the argument they're making. They're arguing . . . They don't supervise what's going on with the other entities in their, whatever it would be, sphere. Yeah, what they're essentially arguing, Your Honor, is that they are a parent of an insured. But the problem is, under the named insured, the broad form named insured clause, that they have to show that Ecolab owns more than 50% of a subsidiary. That is how you become an insured under that policy provision. They are proving quite the opposite. They are proving that these NALCO Canada entities are, in fact, owned by more than 50% by Champion X Corp. That not only gets them closer to coverage for Champion X Corp., it gets them further for coverage because they're establishing that Champion X Corp. owns more than 50% of a subsidiary, what was once an obsidiary of Ecolab, Inc. And therefore, even those subsidiaries now are not insureds under the policy because the broad . . . They would no longer be included as parties under the contract, right? They would no longer be included because if they are fully owned by the parent, then they can't be a subsidiary of both. If they're a subsidiary of Champion X Corp., then they cease to be a subsidiary of Ecolab, Inc., which is their only basis for obtaining coverage under the broad form named Insured Clause. And to anticipate your question that you might have, Judge Elrod, on the best cases for that, a parent and a subsidiary are separate legal entities. They do not have interchangeable rights. And so the fact that a subsidiary may have a right in an insurance policy or even declaratory judgment rights does not give the parent those same rights. Champion X Corp. is a parent of a subsidiary who may at one time have had coverage under Ecolab, Inc., which is the ISOP policy. There is, by the way, no argument by appellant that Champion X Corp. has any coverage rights in AIG's policy. There's no argument of that. There's no evidence of that, and they have not even asserted that. So we're only talking about the ISOP policy. But those cases are cited at pages 18 to 19 of our brief. And in addition to that, to answer your question, Judge Clement, I am jumping around a little bit, but I just want to take questions head on that were asked to appellant. You asked, what effect would it have if the district court had granted leave to add other parties? And I'll address in a minute, it's not viable to argue that this is a de novo review on denying leave. It's abusive discretion, and there's broad discretion given to district courts on that. So it's not a de novo review. But in any event, what effect would it have? I believe the answer you got was it would have no effect on Champion X Corp. And that is accurate. And that is the very reason that the district court held it would be futile to grant that leave. Are they trying to get these other people in because they have a limitations issue with them and they actually have claims, these other parties? Or I'm trying to figure out why would they be so interested in that since it doesn't help Champion? Well, that's a great question. I can speculate just as you can. It's certainly not established in the record. There could be a couple of reasons. One is the very reason they chose Champion X Corp. to file this lawsuit was to get a That's not a good basis for doing so. But it may also. These other people are not going to get Champion X anything. Champion X does not benefit. So it is futile as to Champion X. And that is the issue. That is the issue. Champion X Corp. does not have standing to bring this lawsuit. Whether or not other parties could have had standing is not the issue. And adding other parties is not going to give Champion X standing. It doesn't give them standing at all. It does not give them standing at all. That is true. Appellant has also asserted the argument. But those other people could have some claims. They could potentially have claims. In fact, they could go file a lawsuit tomorrow. There's nothing about this lawsuit that applies to them or directly keeps them from doing so. Obviously, the District Court couldn't have entered an order that would have impacted entities who are not parties to this lawsuit. They could go file that lawsuit tomorrow. The other reason, Judge Clement, I believe, for the District Court's futility ruling is a couple of things. One is that this is unique in the context of Champion X Corp. knew about all these other entities. They knew about the underlying lawsuit, number one, and they knew who those underlying defendants were. They also, evidenced by this complex chart that they eventually produced, which is at 2994 of the record, which I don't believe is summary judgment evidence because it's not authenticated and it's not proven up, and it doesn't really prove anything, but Champion X Corp. knew about all these corporations. These are within their stream of commerce. These are their corporations that they are affiliated with and do business with. So when you have to show good cause for leave to amend your pleadings, it is certainly within the court's discretion to say, but you knew about these entities all along. And per Federal Rule of Civil Procedure 16, the scheduling order in this case had to have a deadline to add parties. The scheduling order in this case did have that deadline. It was back in March of 2024. No new parties were added by that time period. In ISOP's motion to dismiss, they raised the issue that to this point, appellant has not shown that they have standing to bring the lawsuit and has not shown that they are a proper party to this. That was not asserted at that time as a basis for dismissal, but they certainly raised the issue then. When Champion X Corp. filed their summary judgment, the response explicitly in the summary of argument and continuing the argument said, Champion X Corp. does not have standing to bring this lawsuit. And the district court ordered in June of 2024 in the memorandum and order, ordered that they were denying, it was denying Champion X Corp.'s motion for summary judgment based on Champion X Corp.'s lack of standing. For many months after that, Champion X Corp. did not seek leave to amend its complaint and did not in any way try to resolve the standing issue. Finally, the insurers filed a motion for summary judgment and at that time and only that time did Champion X Corp. seek leave to amend its complaint. For all of those reasons, the district court was within its discretion to deny leave to amend the complaint and it would have been futile to do so. To address briefly the waiver argument that Appellant raises, it's an ironic assertion of waiver because it's worth at least explaining to the court that Appellant did not raise waiver in the summary judgment record. They did not raise it at any time in the written summary judgment record. They brought it up at a hearing. They brought it up at a hearing way back in the summary judgment, their own summary judgment, and the district court said, that's not a part of this record because when you put it in a reply, it's not a part of the summary judgment record. So it obviously follows that bringing it up at a hearing is not an assertion of waiver. Champion X Corp. did not bring it up again until this appeal. So arguably, Champion X Corp. has waived the waiver argument, but in any event, on the This is not about Article III standing. This is about contractual standing. This has nothing to do with Article III standing. Champion X Corp. had a right to be in a United States district court. They did not lack subject matter jurisdiction. What they lacked was standing to assert claims in a policy to which they were not covered under and which they were not named. They were not . . . We've already said that, too. They agree that they have Article III standing. Everybody agrees there's Article III standing. There is Article III standing, yes, but I raise that because there is a different standard for asserting a defense with Article III standing than there is with contractual standing. With Article III standing, it's supposed to be raised in the first substantive pleading for obvious reasons because it's asserted by a different Rule 12b motion that can be waived, but contractual standing can be raised in due course, and it can be raised at any time in a manner that does not constitute unfair surprise. And there is no argument here that Appellant was unfairly surprised by the assertion that it lacked standing. AIG Canada noted in its original 12b motion that, to date, Champion X Corp. had not properly raised the issue of . . . had not properly shown it had standing to assert the lawsuit, did not seek dismissal on those grounds, but certainly said it reserved the right to assert standing later. They explicitly said that in their first substantive pleading. ISOP's original answer was filed in Texas State Court, which, as the Court knows, a general denial, unlike in federal court, would be proper, and that answer carried over to federal court. In response to Champion X's motion for summary judgment was the first substantive pleading by ISOP explicitly arguing lack of standing, which is what the District Court ultimately held in June of 2024. And then four months later, ISOP and AIG asserted summary judgment explicitly on the standing ground. There is no argument that there was unfair surprise with standing or that somehow Champion X Corp. did not have adequate time to respond to it. They had months and months and months to respond to it, and they did respond to it. They produced evidence. It was not evidence that established standing, but it was certainly in front of the Court and well-established in the summary judgment record. So Appellees have not waived the standing argument. The District Court did not abuse its discretion in refusing to allow appellant to amend its pleadings for a number of reasons, not the least of which it would not have made a difference in whether or not Champion X Corp. had standing, which brings us to the very standing issue. Champion X is undisputedly a stranger to this insurance policy. They are not named. They are not an additional insured, and they only have two bases that they can assert for being able to obtain insurance and assert this claim. The first is they can do it through the named insured, the broad form named insured clause. But as we've already addressed, you have to show that Champion X Corp. was owned more than 50% by Ecolab Inc. We're not talking about Ecolab Co. with the AIG policy. They have produced no evidence and don't even argue that policy at this point. But with Ecolab Inc., they have to show Ecolab Inc. owned more than 50% of Champion X Corp. They don't even seek to prove that. What they're arguing is a subsidiary of Ecolab Inc. was eventually bought by or merged into, it's not merged into, it's actually bought by. Bought by Champion X Corp. And because Champion X Corp. is the parent of those subsidiaries that would be named insureds under this clause. Therefore, the parent gets the same insurance that the subsidiary does. Parents and subsidiaries are distinct legal entities. They are not interchangeable. And in any event, to show that Champion X Corp. is the parent of an insured under this subsidiary provision is in fact showing that Champion X Corp. could never be an insured. Because they don't fall under a subsidiary of Ecolab Inc. Lastly, summary judgment is also proper. Because there is no coverage for any insured under this insurance policy. The district court did not reach this issue, but it's fully briefed. And this court could reverse on, well, could affirm on those alternative grounds as well. The ISOC policy contains a time element policy pollution exclusion. The AIG policy contains a similar pollution exclusion. Texas enforces exclusions as written in policies including pollution exclusions unless they violate a statute. This one does not violate any statute. The underlying lawsuit sought damages for a corroded pipeline that burst and put into the environment oil, a pollutant. And they sought damages from that lawsuit to clean up and remediate the cost. This fits squarely within those exclusions. The court, I mean, the appellant last week cited the court to the Clean Harbor case in a letter brief. That is a Massachusetts Intermediate Court of Appeals case that looked at a similar pollution exclusion and held in that case that it did not apply in that particular case. That's a Massachusetts Intermediate Court of Appeals case, but interestingly, that Massachusetts case cites to the very federal Texas district court case that we have cited in our brief, Mid-Continent Casualty versus Third Coast Packaging, which held on an eerie guess that Texas law would apply this similar pollution exclusion to preclude coverage. Just like your fourth backstop argument that you would want us to rely on a previous eerie guess in a district court case. Is that what you're making right now? It is. It's a belt and suspenders, as they say, for sure. I would address one last thing, unless the court has further questions, and this is going back, I apologize. On the lack of standing, the only other basis for Champion-X Corp, because it can't fall under a subsidiary of Ecolab Inc. It's arguing it's a parent of the very subsidiaries that might have coverage. The only other basis they could obtain it is through an assignment from the insured Ecolab Inc. A few problems with that on the assignment front. As the district court pointed out, Champion-X Corp cannot receive the benefit of that assignment because it is not a party to the separation agreement. It never was a party to the separation agreement, and certainly can't receive an assignment from something it was not a party to. The second is, the ISOP and AIG policies contain an anti-assignment provision, which is also enforced under Texas law, and it has not been waived by intentional relinquishment, because the original denial letter that was sent by the insurers was sent to the insureds, not those who are not insureds, like Champion-X Corp. And finally, again, a belt and suspenders, maybe the fifth backstop at this point, Judge Elrod. Even if the assignment rights were somehow valid in favor of Champion-X Corp, the assignment rights expired on December 18, 2022, three years after executing the agreement, which is eight months before Champion-X initiated this lawsuit. In summary, this court should affirm the summary judgment either on the explicit grounds that it was granted on, or on the policy exclusions. Thank you. Thank you. We have your argument. You may proceed with your rebuttal. Thank you, Your Honor. I'd like to respond to some of the points that counsel raised. The position that the appellee started with, that the subsidiaries are not covered under the policies because they are owned now by Champion-X Corp. That's the first time we've heard that argument, if I understood what he was saying correctly. I think that is clearly wrong, because the relevant time under these policies was the time of occurrence. At the time the pipeline issues happened, the entities were wholly owned at that time by Ecolab, so therefore they were covered by the named insured policy. I think, maybe I misheard, but that argument is new and it's deeply, deeply flawed. As far as DeNova review, I'll quickly give the court the site to support my statement. I'm looking at Calhoun v Villa, Wilson v Brooks-Clockner, and we can provide those citations to the court. Essentially, the review of the motion for leave to amend is typically governed by an abuse of discretion standard. However, where the sole, and what these cases hold, is that the court reviews DeNovo when futility is the sole grounds for the denial. Because that involves basically a 12B6 standard of review, so it is looked at DeNovo. Next, I'd like to address the argument, which I believe Chief Judge Elrod noted, and the appellees quickly latched on to, which was that Champion X wouldn't benefit, so the amendment would be futile. And I think we have to go back to kind of first principles under Rule 15 on that when you look at this court's decision in the Stripling case, which was cited at page 33 of our brief. It really, the question is centered on the complaint itself. Does the complaint state a claim? It says the amendment of the complaint is futile, and I know this is not a direct quote, but it essentially holds the amendment of the complaint is futile only when the proposed These proposed complaints state a claim for relief by these other parties. The question is not, does it state a claim for relief by Champion X Corporation? The question is, does it state a claim for relief? And we would submit, if you look at these complaints, they do state a claim for relief. They allege that these entities were insureds under the agreement, that they tendered under these policies, and that the coverage was denied. That's a claim for relief for breach of an insurance policy. So we respectfully submit that they do submit a claim for relief. In fact, council never argued this point below. The district court did not decide on this basis. The arguments below centered on their claims that they were futile because these other entities never made a tender. Well, they do allege that they made a tender, which is all that you have to do under Rule 12B6. And we have attached evidence in the record below showing that, in fact, it was tendered on behalf of these entities. And that the insurers knew that it was tendered on behalf of the entities because they specifically denied as to all defendants in the underlying case. So that's not futile from that standpoint. The other futility argument that they made, I will have to turn to that, is they argued that they weren't insureds under the agreement. We believe, number one, all you have to do is allege that you weren't insured. This is a 12B6 standard. You don't have to prove it as you would under summary judgment. There's an allegation that they were insureds. Further, we have shown, we believe, through the second motion for leave to amend, that the way that these transactions worked, these are the same entities that were wholly owned subsidiaries of Ecolab and thus insureds under the policy at the time of these events. And they are also today wholly owned subsidiaries of Champion X. So there is no futility. These complaints that we sought leave to file stated claims for relief. And so we contend that the trial court clearly erred in not allowing those. Council makes the argument that these other entities are free to file a lawsuit tomorrow if they wish, asserting these same claims. We agree, that is an option. But what he does not note is the fact that the Champion X, and to some extent the judicial system, had to spend a year on the issue of trying to get service on AIG Canada, the history of that is recited in our briefs. It took almost exactly a year from the time the complaint was filed until Champion X, until AIG Canada filed an answer in district court. In the meantime, there were motions practiced, multiple service attempts. This is a waste of resources that is unnecessary, where you already have a pending action and you have other plaintiffs that are standing by ready to join in to pursue these claims here. The other point that makes this a more desirable vehicle is that AIG Canada, when they finally did join the case, filed a motion to dismiss for lack of personal jurisdiction. But Judge Ellison found that they had waived the right to challenge personal jurisdiction because they didn't assert it in their first motion to dismiss in which they asserted a challenge service and they also challenged the statute of limitations. So they waived the personal jurisdiction, they are stuck with personal jurisdiction here. If a new action is filed, we will have to retread the service issues and the jurisdictional challenge. Thank you. This case is submitted. We appreciate the argument on both sides and the court will stand in recess until 9 AM tomorrow.